```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/2/08
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
PHILIP R. BELPASSO,                              :     07-Civ-3627 (SHS)(DCF)
                                                 :     + consolidated case
                          Plaintiff,             :
                                                 :     MEMORANDUM & ORDER
          -against-                              :
                                                 :
CITY OF NEW YORK, PORT AUTHORITY OF              :
NEW YORK AND NEW JERSEY, and PORT                :
AUTHORITY OF NEW YORK AND NEW                    :
JERSEY PORT AUTHORITY POLICE,                    :
                                                 :
                          Defendants.            :
------------------------------------------------------------x

SIDNEY H. STEIN, U.S. District Judge.

    In the consolidated amended complaint in these actions, pro se plaintiff Philip Belpasso asserts claims arising out of his several arrests by officers of the Port Authority of New York and New Jersey Police Department at the World Trade Center construction site. He alleges that these arrests were chiefly motivated by a desire to prevent him from playing the flute and handing out literature at the site which, he alleges, are protected by the First Amendment to the United States Constitution. The complaint also alleges false arrest, false imprisonment, the use of excessive force, and attempting his "assassination." The Port Authority of New York and New Jersey

1

("Port Authority") has answered the complaint and discovery is ongoing in regard to Belpasso's claims against it.

The allegations against the City of New York are considerably less wide ranging than those against the Port Authority and relate chiefly to a single incident on August 18, 2006, when the New York City Police Department ("NYPD") allegedly conspired with Port Authority police officers unlawfully to detain plaintiff in a City jail overnight—during which time plaintiff was physically assaulted by a cellmate—on the basis of an invalid arrest warrant. Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the City now moves to dismiss all of the claims asserted against it. Even construed liberally, plaintiff's complaint fails to state any claim against the City upon which relief may be granted. Accordingly, the motion is granted and plaintiff's claims against the City are dismissed.

## I. Background

The following facts are as alleged in the complaint and are only those that implicate the City of New York, which is the sole party that has moved to dismiss the claims against it.

### A. The June 15, 2006 Arrest and Summons

According to the complaint, on June 15, 2006, plaintiff was playing his flute and distributing literature on Church Street near the World Trade Center site when he was approached by a Port Authority police officer who "harass[ed] and insult[ed] him" and told him to leave the area. (Compl ¶ 19.) Believing that his conduct was protected by the First Amendment, plaintiff questioned the legality of the order. (Id.) The officer, along with two other Port Authority police officers, then arrested plaintiff and took him to a Port Authority trailer on the site. (Id.)

In the trailer, a Port Authority police officer filled out a form charging plaintiff with

disorderly conduct in violation of New York Penal Code § 240.20. (Id. ¶¶ 19, 20; Top Page of Ticket No. 409678237-3 dated June 15, 2006 ("Master Copy" or "White Copy"), Ex. D to Compl. at 2.) The officer signed a statement averring that plaintiff "was blocking the sidewalk on Church Street [and] when asked to get up from the sidewalk . . . refused to move and became belligerent causing a crowd to gather." (Compl. ¶ 20; "Criminal Court Information" of Ticket No. 409678237-3 dated June 15, 2006, Ex. D to Compl. at 3.)

The form filled out by the officer was a multi-page document with a "white master court copy" on top and several color coded carbon copy pages attached below. (Compl. ¶¶ 20, 22(1)-(6).) The yellow carbon copy is used for traffic tickets and indicates that the ticketed person may answer by mail. (Id. ¶ 22(1)-(6); Copy of Ticket No. 409678237-3 dated June 15, 2006 ("Yellow Copy"), Ex. D to Compl. at 1.) A pink carbon copy is used for criminal offense summonses and contains a space to enter a court appearance date. (Compl. ¶¶ 20, 22(1)-(6).) The yellow copy lacks a space for a court appearance date. (Id. ¶ 20.) In this case, the Port Authority police officer filled out the white master copy and obtained plaintiff's signature under the pre-printed words "I acknowledge receipt of this summons. I understand it is my responsibility to read and comply with the instructions on my copy, and that my signature below is not an admission of guilt." (Id. ¶ 20; Ex. D to Compl. at 1, 2.) However, rather than providing plaintiff with the pink copy used for criminal offense summonses, as would be expected for a charge of disorderly conduct, the officer allegedly improperly gave plaintiff the yellow traffic ticket copy. (Compl. ¶¶ 19, 20.) The Port Authority police officer told plaintiff that he was being given the "erroneous yellow traffic ticket—instead of a pink criminal summons—as a 'favor' so [plaintiff] would not really be summoned." (Id. at 20.) However, the officer "tampered with" the yellow traffic ticket by writing in a court appearance date of August 10, 2006 even though there was no

space on the yellow copy for such an entry. (Id.)

Plaintiff was "disturbed and suspicious" of the motives behind the officer's irregular paperwork and therefore took the ticket to the New York City Criminal Court, where the clerk told him that the "ticket was improper." (Id. ¶ 23.) Plaintiff also mailed the ticket to the New York State Department of Motor Vehicles ("DMV"), pleading not guilty to the charge of disorderly conduct. (Id.) In response, plaintiff received a letter from the DMV stating,

> The enclosed traffic ticket #4096782373 concerns a violation answerable to the New York City Criminal Court. However, since the police officer issued the charge on the wrong summons, we have been advised by the New York City Criminal Court the ticket cannot be processed. Unless the police or court notifies you, no further action is to be taken.

(Letter addressed to Philip Belpasso from Nancy Diamond, Traffic Violations Div. New York State Dept. of Motor Vehicles dated July 25, 2006, Ex. D to Compl. at 5.)

B. The August 10, 2006 Arrest Warrant

Despite the oral assurances allegedly given to plaintiff by the clerk of the Criminal Court and the written assurances by the DMV that the June 15, 2006 ticket was not a valid criminal summons, the Criminal Court issued a bench warrant for plaintiff's arrest when he failed to appear in court on August 10, 2006. (Compl. ¶ 25.) Plaintiff asserts that the Criminal Court "is ultimately responsible" for his subsequent incarceration pursuant to the "improperly issue[d]" warrant. (Id.)

C. The August 18, 2006 Arrest and Detention

On August 18, 2006, plaintiff was arrested by a Port Authority police officer at the World Trade Center site because, he was informed, "warrants" had been issued for his arrest. (Compl. ¶ 28.) Plaintiff was taken first to a Port Authority facility and then to the NYPD's First Precinct. (Id. ¶ 29.) At the First Precinct, plaintiff argued that the warrant underlying his arrest was

4

invalid on the basis of the letter that he had received from the New York State DMV that stated that the June 15, 2006 traffic ticket required no action on his part. (Id.) Belpasso alleges that New York Police Sergeant Al Bano believed that he should have been given an opportunity to produce the DMV letter to demonstrate the invalidity of the warrant and refused to "book" plaintiff. (Id.) As a result, NYPD officer Garcia completed the paperwork required to detain plaintiff, allegedly entering false information into the computer as "part of the plot to falsely incarcerate the Plaintiff even th[ough] they knew or could eas[ily] find out that he was innocent." (Id.) Specifically, plaintiff alleges that Officer Garcia filled out the arrest report with invented information—namely, that a supervising officer identified as "Jones" had approved the booking when in fact no such officer existed. (Compl. ¶¶ 29, 32-37.)

After the allegedly fraudulent arrest report was prepared, plaintiff was taken to a City jail and detained overnight. (Id. ¶¶ 38, 43.) During his detention, "another prisoner who was planted . . . by [the] Port Authority" tried to "assassinat[e]" plaintiff. (Id. ¶¶ 38, 40.) Plaintiff was able to survive that attack by "playing possum" but nevertheless suffered "a few kicks to his back." (Id. ¶ 39.) During the altercation, plaintiff did not call out to the guards because doing so "might have be[en] the exact wrong thing to do as a survival technique." (Id. ¶ 44.)

The following day, August 19, 2006, a judge of the New York City Criminal Court dismissed the June 15, 2006 ticket. (Id. ¶ 43; Certificate of Disposition Regarding Summons No. 4096782373, Ex. E to Compl.) The complaint does not contain any further allegations implicating the City of New York. Plaintiff seeks $3 million in compensatory and punitive damages for his injuries. (Compl. ¶ 74.)

II. **Legal Standards**

When reviewing a Rule 12(b)(6) motion to dismiss, the Court assumes the truth of all

facts asserted in the complaint and draws all reasonable inferences from those facts in favor of the plaintiff. See Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir.2006). Documents that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered. Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007). The Court's task "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Levitt v. Bear Stearns & Co., 340 F.3d 94, 101 (2d Cir. 2003) (internal quotation marks omitted).

Accordingly, a motion to dismiss will be granted only if the plaintiff has not pled "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. ----, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). Pursuant to this "flexible 'plausibility standard,'" Iqbal v. Hasty, 490 F.3d 143, 158 (2d Cir. 2007), cert. granted, 76 U.S.L.W. 3417, 76 U.S.L.W. 3649, 76 U.S.L.W. 3654 (U.S. Jun. 16, 2008) (No. 07-1015), a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," Twombly, 127 S. Ct. at 1965. Pro se complaints are subject to "less stringent standards than formal pleadings drafted by lawyer[s]," and must be construed liberally in the plaintiff's favor. Haines v. Kerner, 404 U.S. 519, 520-521, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972).

### III.   Application

Read liberally, the consolidated amended complaint makes several assertions that could arguably implicate the City of New York and give rise to civil liability: (1) that the New York City Criminal Court unlawfully issued the August 10, 2006 bench warrant that led to plaintiff's false arrest by Port Authority police on August 18, 2006, (2) that following the false arrest by Port Authority police, the NYPD deprived plaintiff of his liberty without due process of law when it ignored his claim that the bench warrant was invalid and instead detained him overnight

in a City jail, (3) that the City failed to protect plaintiff against his physical assault that night, in violation of plaintiff's constitutional rights, and (4) that the City conspired with Port Authority police to falsely arrest, detain, and kill plaintiff. The Court will construe the complaint to assert these theories of liability pursuant to 42 U.S.C. §§ 1983, 1985, 1986, and New York state law.

    A.    <u>The Claims Arising Under Federal Law Fail.</u>

        1.    *Claims Related to the Criminal Court's Alleged Misconduct Are Barred by the Eleventh Amendment.*

Insofar as Belpasso seeks money damages on the grounds that the New York City Criminal Court violated his constitutional rights by issuing the August 10, 2006 bench warrant, his claims must be dismissed. "[T]he Criminal Court of the City of New York [is a] state agenc[y and is a]ccordingly . . . immune" from an action for damages pursuant to the Eleventh Amendment to the United States Constitution. <u>Casaburro v. Giuliani</u>, 986 F. Supp. 176, 182 (S.D.N.Y. 1997) (internal citations omitted); <u>see also</u> <u>Mathis v. Clerk of the First Dep't, Appellate Div.</u>, 631 F. Supp. 232, 235 (S.D.N.Y. 1986) ("[A] state court is not amenable to suit under 42 U.S.C. § 1983 . . . by virtue of the Eleventh Amendment.").

        2.    *Plaintiff Has Failed to Allege Facts Sufficient to Establish Municipal Liability Against the City of New York Pursuant to 42 U.S.C. § 1983.*

42 U.S.C. § 1983 provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State . . . subjects, or causes to be subjected, any . . . person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured.

Assuming for the purposes of this motion that plaintiff has adequately alleged that he was deprived of rights, privileges, or immunities secured by federal law, his claims nevertheless fail because he has not alleged that any deprivation was caused by a custom or policy of the City of New York.

Although the Eleventh Amendment bars suits for money damages against a state and its departments in federal court, it does not similarly protect political subdivisions of the state and the agencies of those subdivisions. See Moor v. County of Alameda, 411 U.S. 693, 717-21, 93 S. Ct. 1785, 36 L. Ed. 2d 596 (1973). Nevertheless, a municipality cannot be held liable pursuant to 42 U.S.C. § 1983 merely on a theory of respondeat superior. Bd. of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 400, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997); Patterson v. County of Oneida, 375 F.3d 206, 226 (2d Cir. 2004); Dove v. Fordham Univ., 56 F. Supp. 2d 330, 336 (S.D.N.Y. 1999). Rather, a plaintiff must show that his injury resulted from a municipal policy or practice. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). Such a policy or practice need not necessarily be articulated as an official, stated directive. Patterson, 375 F.3d at 226. It can be a widespread pattern of behavior that becomes "a custom or usage with the force of law" or a matter of "constructive acquiescence of senior policy-making officials." Id.; see also Hayes v. O'Connor, No. 03 Civ. 1371, 2004 WL 2334078, at *5 (S.D.N.Y. Oct. 14, 2004).

In this case, plaintiff has failed to allege any policy or practice on the part of the City of New York or any of its agencies that caused the alleged deprivation of his constitutional rights. Construed liberally, plaintiff's complaint alleges at most that Officer Garcia of the NYPD filed a fraudulent arrest report over plaintiff's objection that the bench warrant was invalid and that unidentified NYPD officers conspired in some unspecified way with the Port Authority police to detain and kill him. Further, the complaint alleges that unidentified jail guards failed to protect Belpasso from being assaulted even though he made no attempt to inform the guards that the assault was ongoing. The alleged isolated conduct of the individuals described in this complaint does not amount to a policy or practice of the municipality sufficient to establish Monell liability.

Plaintiff has not identified a formal policy of the City or the NYPD unlawfully to incarcerate persons arrested by the Port Authority police or to neglect to protect detainees from assaults by their fellow detainees, an unofficial custom of doing so, or a failure to train municipal employees that amounts to deliberate indifference to the rights of those with whom the employees come in contact. See Monell, 436 U.S. at 690; Sorlucco v. New York City Police Dep't, 971 F.2d 864, 871 (2d Cir. 1992); City of Canton v. Harris, 489 U.S. 378, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989). Plaintiff's failure to allege a policy, custom, or usage leading to the alleged deprivation of his rights is fatal to each of his claims that are alleged pursuant to 42 U.S.C. § 1983.

3. *Plaintiff Has Failed to Allege a Claim for Conspiracy.*

Plaintiff alleges that his arrest and detention were part of a "plot to [eliminate] him" between the City and the Port Authority. (Compl. ¶ 38.) "In order to survive a motion to dismiss on [a] § 1983 conspiracy claim, [a plaintiff] must allege (1) an agreement [between two or more state actors] . . . ; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." Ciambriello v. County of Nassau, 292 F.3d 307, 324-25 (2d Cir. 2002). In Ciambriello, the United States Court of Appeals for the Second Circuit explained that "complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." Id. Here, the allegations in the complaint are wholly conclusory and do not enable defendants "intelligently to prepare their defense." Id.

To the extent that the complaint can be read to assert claims for conspiracy pursuant to 42 U.S.C. §§ 1985 and 1986 it fails because plaintiff has not set forth allegations of racial or other invidious class-based animus prohibited by section 1985, see Hernandez v. Goord, 312 F. Supp.

9

2d 537, 546 (S.D.N.Y. 2004), and "if no cause of action is made out under 1985, none exists under 1986," Martin Hodas, East Coast Cinematics v. Lindsay, 431 F. Supp. 637, 645 (S.D.N.Y. 1977).

B. The State Law Claims Fail.

Under New York State law, a party seeking to hold a municipality liable for false arrest and other torts must file a notice of claim with the municipality within ninety days after the claim arises. See Bennett v. City of New York, 204 A.D.2d 587, 587, 612 N.Y.S.2d 201 (2d Dep't 1994); McKinney's Gen. Mun. Law § 50-e(1)(a). "[A] plaintiff must not only plead in his complaint that he has served a notice of claim, but must also allege that the notice was served at least 30 days prior to commencement of the action and that in that time defendants neglected to or refused to adjust or to satisfy the claim." Davidson v. Bronx Municipal Hosp., 64 N.Y.2d 59, 61-62 (N.Y. 1984). "[F]ailure to plead compliance with a notice of claim requirement constitutes a defect warranting dismissal of a complaint on the ground that it fails to state a cause of action." Jeshurin v. Liberty Lines Transit, Inc., 191 A.D.2d 412, 414, 594 N.Y.S.2d 321 (2d Dep't 1993). Plaintiff has not pled compliance with the applicable notice of claim requirements. Therefore, any state law cause of action against the City of New York is properly dismissed.

**IV. Conclusion**

For the foregoing reasons, the City's motion is granted and all claims against the City of New York are dismissed.

Dated: New York, New York
July 2, 2008

SO ORDERED:

*[signature]*

Sidney H. Stein, U.S.D.J.